In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1792

ROBIN ALLMAN, *et al.*,

*Plaintiffs-Appellees*,

*v.*

KEVIN SMITH, *et al.*,

*Defendants-Appellants*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:12-cv-00568-TWP-DML — **Tanya Walton Pratt**, *Judge*.

SUBMITTED JULY 16, 2014 — DECIDED AUGUST 19, 2014

Before POSNER, WILLIAMS, and HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiffs, former employees of a city in Indiana, sued the mayor, and the city itself, under 42 U.S.C. § 1983. They claimed that the mayor had fired them because of their political affiliations and thus in violation of their First Amendment rights. The mayor riposted that political affiliation was a permissible qualification for their jobs. The district judge granted summary judgment in favor of the mayor with respect to nine of the eleven plain-

tiffs, on the ground that his argument concerning political qualification for their jobs was sufficiently arguable to entitle him to qualified immunity. But the judge denied summary judgment with respect to the two other plaintiffs because she didn't think the mayor's claim of immunity from their suit arguable, given the differences between their jobs and those of the other nine plaintiffs.

The judge refused to certify for interlocutory appeal her denial of the mayor's claim of qualified immunity with respect to those two plaintiffs, on the ground that the issue of his qualified immunity involves a question of fact—namely whether he should have known that his conduct was unlawful (if it was). The judge also refused to stay the district court proceedings pending his appeal. The mayor asks us to grant the stay.

Whether a "job is one for which political affiliation is a permissible criterion … presents a question of law," *Riley v. Blagojevich*, 425 F.3d 357, 361 (7th Cir. 2005), which makes it a proper basis for an interlocutory appeal from a denial of qualified immunity, *Mitchell v. Forsyth*, 472 U.S. 511, 526–30 (1985); M*arshall v. Allen*, 984 F.2d 787, 789 (7th Cir. 1993); *Lopez-Quinones v. Puerto Rico National Guard*, 526 F.3d 23, 25 (1st Cir. 2008), and consequently for a stay of further proceedings in the district court pending that appeal. "Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an immunity from suit rather than a mere defense to liability; and, like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Siegert v. Gilley*, 500 U.S. 226, 232–33 (1991); see also *Mitchell v. Forsyth*, *supra*, 472 U.S. at 526. And so "when a public official takes an interlocutory appeal to

assert a colorable claim to absolute or qualified immunity from damages, the district court must stay proceedings." *Goshtasby v. Board of Trustees of University of Illinois*, 123 F.3d 427, 428 (7th Cir. 1997); see also *Apostol v. Gallion*, 870 F.2d 1335 (7th Cir. 1989).

The district judge also denied the city's motion for summary judgment. The defense of qualified immunity is limited to individuals, but as the city's liability is derivative from the mayor's it wanted to show that he had not violated the plaintiffs' constitutional rights. All the mayor had to show in order to prevail was that even if he did violate those rights he was excused from liability by the doctrine of qualified immunity. The city, which cannot invoke qualified immunity, in order to prevail had to show that the mayor hadn't violated any constitutional rights, a showing that would eliminate the city's liability because its liability is derivative from the mayor's.

The city claims that the doctrine of "pendent appellate jurisdiction" allowed it to appeal. It moved in the district court to stay further proceedings in that court until we resolved its appeal. But the motion was denied. The two motions to stay (the mayor's and the city's) are the only matters before our panel, a motions panel.

The mayor is entitled to a stay because he's claiming qualified immunity. But is the city entitled to a stay? Or even to ask us for a stay? Can it be considered a party to this appeal? These are the interesting questions, and the answers depend on the applicability of the doctrine of pendent appellate jurisdiction, for it is the only possible ground for the city's claim to be a party to this appeal.

It is an embattled doctrine. As explained in *Abelesz v. OTP Bank*, 692 F.3d 638, 647 (7th Cir. 2012), "the Supreme Court sharply restricted the use of pendent appellate jurisdiction in *Swint v. Chambers County Commission*, 514 U.S. 35, 43–51 … (1995), but left a narrow path that the Court later followed in *Clinton v. Jones*, 520 U.S. 681, 707 n. 41 … (1997), holding that an appealable collateral order denying presidential immunity was 'inextricably intertwined' with an order staying discovery and postponing trial." The narrow path allows only a small class of interlocutory appeals, consisting of cases in which an appeal from one ruling in a district court proceeding creates a compelling practical reason to allow an appeal from another ruling in that proceeding even though there is no independent jurisdictional basis for the second appeal, as in this case.

The plaintiffs' claims against the city may, as we have indicated, hinge on the outcome of the mayor's appeal. If the merits panel that will decide that appeal concludes that the mayor did not violate the plaintiffs' constitutional rights (his principal contention), then the suit against the city collapses. But if the panel concludes that although the mayor may have violated those rights they were not sufficiently well established when he did so to defeat his immunity, the plaintiffs' claims against the city will survive his (successful) appeal. That is, a finding that the mayor is immune from liability may leave the merits of the plaintiffs' claims against the city unresolved.

The posture of the city's case is a compelling reason to stay the proceedings in the district court involving the city until the merits panel decides the mayor's appeal. If the panel finds that there was no constitutional violation by the

mayor at all (rather than that qualified immunity saves him, but of course not the city, from being held liable to the plaintiffs), then any proceedings that had taken place in the district court regarding the plaintiffs' claim against the city will have been a waste of time. This possibility provides a compelling reason for allowing the city to appeal from the denial of the stay that it sought in the district court.

The plaintiffs, in contrast, want to try their case against the city, and then, if the merits panel rejects the mayor's appeal from the denial of qualified immunity, hold a second trial, to resolve their claims against the mayor. The trial of the claims against the city has been scheduled for the fall of this year; there is no guarantee that the mayor's appeal will have been briefed, argued, and decided by the merits panel by then. There is thus no guarantee that the panel's decision will come in time to head off the trial should the merits panel decide that the mayor did not violate the plaintiffs' constitutional rights, in which event the claims against the city, being derivative, will evaporate.

The prospect of two trials involving the same facts and witnesses is not an attractive one. If the district court proceedings against the city are stayed, and the merits panel decides that the mayor did not violate the plaintiffs' constitutional rights, there will be no trial. If (with the stays granted) the merits panel decides that the mayor did violate the plaintiffs' constitutional rights but is entitled to qualified immunity, there will be one trial, against the city. Finally, if the merits panel rejects the mayor's appeal, the plaintiffs can try their claims against both the mayor and the city in a single proceeding. Each of these outcomes is preferable to allowing the proceedings in the district court against the city to con-

tinue while the mayor's appeal is under consideration by this court.

A further danger if the city's case isn't stayed is that of conflicting findings between our court and the district court on whether the mayor violated the constitutional rights of the two remaining plaintiffs. That would be an issue in a trial of the claim against the city, since if the answer was negative the city would be off the hook. It might also be an issue for our court in the mayor's appeal, as he will be arguing not only that he had qualified immunity from being sued by the two plaintiffs for violating their constitutional rights but also that he hadn't violated them at all, in which event immunity would be moot.

The city's claimed status as a party to the mayor's appeal thus is indeed "pendent" because of its interdependence with the mayor's appeal. In identical circumstances four other circuits have upheld pendent appellate jurisdiction. *Hidden Village, LLC v. City of Lakewood*, 734 F.3d 519, 523–24 (6th Cir. 2013); *Demoret v. Zegarelli*, 451 F.3d 140, 152 (2d Cir. 2006); *Avalos v. City of Glenwood*, 382 F.3d 792, 801–02 (8th Cir. 2004); *Altman v. City of High Point*, 330 F.3d 194, 207 n. 10 (4th Cir. 2003). None has denied it. We can't think of any reason to reject this consensus. And it is significant that the cases we just cited all postdate *Swint*, the case that shrunk the doctrine of pendent appellate jurisdiction to its current slim proportions.

But the scope of our pendent jurisdiction of the city's claim is exceedingly narrow. The city is a party only for the purpose of being able to ask us to reverse the district court's denial of a stay of proceedings against it in that court. We have no jurisdiction over its appeal from any rulings by the

district court other than that denial. It will be the business of the merits panel to decide the mayor's appeal from the denial of summary judgment regarding the two plaintiffs whom the district judge declined to dismiss.

We hereby stay the district court proceedings both against the mayor and against the city.